UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| **NORTHFIELD INSURANCE COMPANY,** } } } | |
| Plaintiff, } } | Case No.: 4:17-cv-01236-ACA |
| v. } } | |
| **BROWNING TIMBER & SAW MILL, LLC, et al.,** } } } | |
| Defendants. } | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Northfield Insurance Company ("Northfield") asks the court to declare that under the terms of a commercial general liability insurance policy issued to Defendant Browning Timber & Saw Mill, LLC ("Browning Timber"), Northfield does not have a duty to defend or indemnify Browning Timber or Defendants Colin Browning and Jonathan "Bo" Darnell in an underlying state court action filed by Defendant Brad Wilson. Currently before the court is Northfield's motion for summary judgment. (Doc. 56). For the reasons explained below, the court **GRANTS** the motion.

**I.     STANDARD OF REVIEW**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact." *FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1307 (11th Cir. 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). A "material fact" is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**II.    BACKGROUND**

In the light most favorable to the Defendants, the facts are set forth below.

*A.     Underlying Incident and Complaint*

In the spring of 2016, Mr. Browning hired Mr. Wilson and his company, Pier One Pile Driving, LLC, to build a pier on Mr. Browning's property. (Doc. 57-2 at 8, 18; Doc. 57-3 at 21-22). While Mr. Wilson was building the pier, Mr. Wilson and Mr. Browning discussed Mr. Browning's sawmill business, Browning Timber. (Doc. 57-2 at 19). Mr. Wilson mentioned that he and his wife were clearing some land they owned in order to build a house, and he asked Mr. Browning if he would be interested in cutting and hauling off trees from Mr. Wilson's property. (Doc. 57-2 at 19; Doc. 57-3 at 22, 25). In exchange for his

work, Mr. Wilson agreed that Mr. Browning could take any pine trees from the Wilson property that Mr. Browning wanted for his sawmill business. (Doc. 57-2 at 21; Doc. 57-3 at 22, 25, 58).

Mr. Wilson and Mr. Browning disagree about the scope of the work that Mr. Browning was to perform. Mr. Wilson intended that Mr. Browning would take the pine trees off the property and prune the oak trees on the property. (Doc. 57-2 at 65). Mr. Browning disputes that he was going to prune or trim any trees. (Doc. 57-3 at 21, 31; Doc. 57-4 at 12). Mr. Browning understood that Mr. Wilson would let him cut down and take any pine tree logs that interested him. (Doc. 57-3 at 22, 31; Doc. 57-4 at 12).

Mr. Browning went to Mr. Wilson's property on April 3, 2016. (Doc. 57-4 at 12). On the way there, Mr. Browning ran into a friend, Mr. Darnell, who asked if he could accompany Mr. Browning and help him remove the trees and load the logs. (Doc. 57-3 at 48; Doc. 57-4 at 14; Doc. 57-5 at 13-14). Mr. Darnell was not an employee of Mr. Browning or Browning Timber. (Doc. 57-3 at 48-50; Doc. 57-5 at 14).

Mr. Browning testified that upon arriving at Mr. Wilson's property, he discovered that there were only five or six trees that he could use for his sawmill business, and those trees were surrounded by trees that Mr. Wilson had already pushed down with a bulldozer. (Doc. 57-3 at 58-59; Doc. 57-4 at 12-13; Doc. 57-

5 at 16-17 Doc. 57-6 at 11). To reach the trees that Mr. Browning wanted for his sawmill business, Mr. Darnell testified that he needed to cut down a standing oak tree. (Doc. 57-5 at 22).

Mr. Darnell used a chainsaw to "notch" the tree at the base of the trunk so that he could control the direction in which it would fall. (Doc. 57-5, pp. 23-27; Doc. 57-6 at 7-8). As Mr. Darnell was cutting the trunk of the tree, the chainsaw became stuck. (Doc. 57-5 at 20-21, 27-28; Doc. 57-6 at 7). Mr. Darnell planned to use Mr. Browning's skid steer to push the tree over and free the chainsaw, but the skid steer had mechanical problems and would not crank. (Doc. 57-3 at 70-73; Doc. 57-4 at 13; Doc. 57-5 at 29-30).

Mr. Browning and Mr. Darnell left Mr. Wilson's property so that Mr. Browning could pick up a mechanic to repair the skid steer. (Doc. 57-3 at 72-73; Doc. 57-4 at 14; Doc. 57-5 at 32; Doc. 57-6 at 8). Mr. Browning dropped off Mr. Darnell at his car and went to meet the mechanic at Browning Timber's business location. (Doc. 57-3 at 74). Mr. Darnell then returned to Mr. Wilson's property to try to get the chainsaw out of the tree. (Doc. 57-5 at 33). When Mr. Darnell arrived, he learned that the tree had fallen on Mr. Wilson. (Doc. 57-5 at 33). Mr. Darnell called Mr. Browning to tell him what happened. (Doc. 57-4 at 14; Doc. 57-5 at 37; Doc. 57-6 at 8).

Mr. Browning, as the sole member of Browning Timber, did not report the incident to Northfield or report a claim to Northfield at that time. (Doc. 57-4, p. 17; *see* Doc. 57-4 at 20, 59). Mr. Darnell never reported the incident to Northfield. (Doc. 57-6 at 6).

On June 29, 2016, Mr. Wilson filed a lawsuit in state court against Browning Timber. (Doc. 57-6 at 19-22; Doc. 57-8 at 33-34). The complaint alleged that Browning Timber negligently and wantonly "cut and remove[d] trees off of the property owned" by Mr. Wilson. (Doc. 57-8 at 33). On July 7, 2016, Browning Timber was served with the state court complaint. (Doc. 57-4 at 10, 59; Doc. 57-7 at 2).

On August 22, 2016, at the recommendation of his attorney, Mr. Browning delivered a copy of the state court complaint to his insurance agent, Hodges Ford Insurance Agency, Inc. ("Hodges Ford"). (Doc. 57-4 at 7). However, Mr. Browning did not notify Northfield of the state court complaint at that time. (Doc. 57-4 at 20, 59; *see* Doc. 57-8 at 7, 22). On February 23, 2017, at Mr. Browning's request, Hodges Ford submitted an Accord Notice of Occurrence/Claim form to McClelland & Hine, Inc., Northfield's general agent. (Doc. 57-8 at 7; Doc. 57-9 at 2). On March 15, 2017, Northfield advised Browning Timber that it would defend Browning Timber in the state court action, subject to a full reservation of rights. (Doc. 57-14 at 2-6).

5

On October 24, 2017, Mr. Wilson amended his state court complaint to include Mr. Browning and Mr. Darnell as defendants in the underlying action. (Doc. 57-11 at 2). On January 19, 2018, Northfield advised Mr. Browning and Mr. Darnell that it would defend them in the state court action, subject to a full reservation of rights. (Doc. 57-12 at 2-7). On June 5, 2018, Mr. Wilson filed a second amended complaint in the state court action. (Doc. 62-4 at 2-6). The second amended complaint alleges that Browning Timber, Mr. Browning, and Mr. Darnell "negligently/wantonly pruned [the tree] and left it in a condition which was dangerous" to Mr. Wilson and caused his injuries. (Doc. 62-4 at 3-4, ¶ 14, 17).

### B. *Relevant Policy Language*

Northfield issued a Commercial General Liability policy to Browning Timber & Saw Mill, LLC for the policy period of March 17, 2016 to March 17, 2017 (the "Policy"). (Doc. 57-1 at 2).

An endorsement to the Policy states that "[t]his insurance applies to 'bodily injury' and 'property damage' caused by only those operations which are classified and shown on the Commercial General Liability Coverage Declarations, its endorsements, and supplements." (Doc. 57-1 at 32). The Declarations identify the following classifications for coverage under the Policy: "Tree Pruning, Dusting, Spraying, Repairing, Trimming or Fumigating." (Doc. 57-1 at 15). Policy

insureds include an LLC and its members along with any "volunteer workers" who perform "duties related to the conduct of [the] business." (Doc. 57-1 at 25). A volunteer is defined by the Policy as

> a person who is not your "employee" and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

(Doc. 57-1 at 31).

The Policy also contains notice requirements. The insured is required to notify Northfield "as soon as practicable of an 'occurrence' or an offense which may result in a claim." (Doc. 57-1 at 26). The insured must also notify Northfield if a claim or suit is brought. (Doc. 57-1 at 26). And, copies of any legal papers must be sent to Northfield "immediately." (Doc. 57-1 at 26).

### *C.* *This Lawsuit*

On July 24, 2017, Northfield filed this declaratory judgment action against Browning Timber and Mr. Wilson. (Doc. 1). Based on the allegations contained in Mr. Wilson's original state court complaint, Northfield asked the court to declare that it did not owe a duty to defend or indemnify Browning Timber against Mr. Wilson's claims. (Doc. 1 at 8-9). After Mr. Wilson amended his state court complaint to add Mr. Browning and Mr. Darnell as defendants, Northfield filed an amended declaratory judgment petition to add Mr. Browning and Mr. Darnell as defendants in this case. (Doc. 22).

Mr. Wilson, Browning Timber, and Mr. Browning have appeared and defended this lawsuit. (Doc. 8; Doc. 9; Doc. 10; Doc. 26; Doc. 29). Mr. Darnell has not answered Northfield's complaint or otherwise appeared in this action. The Clerk entered default against Mr. Darnell, but the court denied Northfield's motion for default judgment against Mr. Darnell pending resolution of the merits of Northfield's claims against the remaining defendants. (Doc. 35; Doc. 37).

Northfield filed its motion for summary judgment on September 17, 2018. (Doc. 56). Only Mr. Wilson filed a response in opposition to the motion. (Doc. 66).

## III. DISCUSSION

Northfield moves for summary judgment on two separate grounds. First, Northfield argues that it is released from coverage because Browning Timber, Mr. Browning, and Mr. Darnell breached the notice provisions of the Policy. Second, Northfield contends that no coverage exists because Mr. Wilson's injuries were not caused by one of the specific operations identified in the Policy Declarations. (Doc. 60 at 22-36). The court does not consider Northfield's notice argument because, as explained below, the court finds that Northfield has no duty to defend or indemnify the underlying defendants because the insuring agreement is not satisfied.

Under Alabama law,[1] an insurer's duty to defend is broader than its duty to indemnify. *Ladner & Co., Inc. v. So. Guar. Ins. Co.*, 347 So. 2d 100, 102 (Ala. 1977). "[W]hether an insurance company owes its insured a duty to provide a defense is determined primarily by the allegations contained in the complaint." *St. Paul Fire & Marine Ins. Co. v. ERA Oxford Realty Co. Greystone, LLC*, 572 F.3d 893, 894-95 (11th Cir. 2009) (citing *United States Fid. & Guar. Co. v. Armstrong*, 479 So. 2d 1164, 1168 (Ala. 1985)). "If the allegations of the injured party's complaint show an accident or occurrence within the coverage of the policy, then the insurer is obligated to defend, regardless of the ultimate liability of the insured." *Ladner*, 347 So. 2d at 102. However, to determine an insurer's duty to defend, "the court is not limited to the bare allegations of the complaint in the action against [an] insured," and "may also look to facts which may be proved by admissible evidence." *Acceptance Ins. Co. v. Brown*, 832 So. 2d 1, 14 (Ala. 2001) (internal quotation marks and citation omitted).

---

[1] The court has diversity of citizenship jurisdiction over this action. (Doc. 1 at ¶¶ 2-7; Doc. 22 at ¶¶ 2-9). Therefore, the court applies choice of law principles of Alabama, the forum state. *St. Paul Fire & Marine Ins. Co. v. ERA Oxford Realty Co. Greystone, LLC*, 572 F.3d 893, 894 n.1. For insurance policies, the state in which the policy was issued and delivered is the state in which the contract was formed. *Id.*; *see also Cherokee Ins. Co., Inc. v. Sanches,* 975 So. 2d 287, 292 (Ala. 2007). Because Browning Timber applied for and received the Policy in Alabama, Alabama substantive law applies. (*See* Doc. 57-1 at 2; Doc. 57-4 at 43-53).

The Policy applies to bodily injury[2] caused only by "Tree Pruning, Dusting, Spraying, Repairing, Trimming or Fumigating." (Doc. 57-1 at 15). Mr. Wilson argues that coverage exists under the Policy because his injuries were caused by tree pruning or trimming. (*See* Doc. 61 at 12, 17). Northfield argues that no coverage exists under the Policy because Mr. Wilson's injuries were caused by a failed attempt to cut down the tree, not tree pruning or trimming. (Doc. 60 at 31-36).

Mr. Wilson does not claim that the classification limitation language is ambiguous. (*See* Doc. 61 at 11, 16). And "insurers have the right to limit their liability by writing policies with narrow coverage." *ERA Oxford Realty Co.*, 572 F.3d at 898. Therefore, the court must "enforce the insurance policy as written," *Safeway Ins. Co. of Ala., Inc. v. Herrera*, 912 So. 2d 1140, 1143 (Ala. 2005), and determine whether the allegations in Mr. Wilson's state court complaint and other evidence show that his injuries were caused by one of the classified operations identified on the Declarations, *see ERA Oxford Realty Co.*, 572 F.3d at 895.

In his second amended complaint, Mr. Wilson alleges that Browning Timber, Mr. Browning, and Mr. Darnell "negligently/wantonly pruned [the tree] and left it in a condition which was dangerous" to Mr. Wilson and caused his

---

[2] The parties have not argued that Mr. Wilson's injuries do not constitute "bodily injury" under the Policy, and for purposes of summary judgment, the court assumes that Mr. Wilson's injuries meet the Policy's definition of "bodily injury."

injuries. (Doc. 62-4 at 3-4, ¶¶ 14, 17). At first blush, because Mr. Wilson's complaint alleges injuries due to tree pruning, it appears that Mr. Wilson's complaint shows an occurrence for which the Policy provides coverage. But that is not the end of the story. In this case, facts that may be proved by admissible evidence demonstrate that cutting a notch in the tree caused Mr. Wilson's injuries, and you do not cut a notch in a tree that you are merely pruning or trimming.

Mr. Wilson testified that Mr. Browning and Mr. Darnell "cut the tree in two" and "cut big notches" out of the tree. (Doc. 57-2 at 65). Mr. Darnell cut the "notch" in the tree with a chainsaw, and the chainsaw became stuck. (Doc. 57-6 at 7). Mr. Wilson admits these acts caused the tree to fall on him. (Doc. 57-2 at 34).

Mr. Darnell testified he cut the notch in the tree for the purpose of cutting the tree down. (Doc. 57-6 at 7). According to Mr. Darnell, the only reason to cut a notch in a tree is to "actually fell the tree," not to prune or trim the tree. (Doc. 57-6 at 7). During Mr. Darnell's deposition, no party objected to counsel's questions about the reasons why someone would cut a notch in a tree. And, Mr. Darnell explained that his testimony was based on his experience working for a tree service company for two years and being around his father's tree service business. (Doc. 57-6 at 7). Thus, Mr. Darnell's testimony on this point is an admissible lay opinion under Rule 701 of the Federal Rules of Evidence.

Mr. Wilson argues that "it does not matter whether the felling of the tree injured Wilson or whether the pruning of the tree injured Wilson. Both of these services are regularly provided by 'tree service' companies." (Doc. 61 at 12). Mr. Wilson's argument misses the mark. Even if tree felling and tree pruning both might fall within services that a tree service company provides, the court is not at liberty to rewrite the unambiguous policy language "so as to include or exclude coverage that was not intended." *Travelers Cas. & Sur. Co. v. Ala. Gas Corp.*, 117 So. 3d 695, 699 (Ala. 2012) (internal quotation marks and citation omitted). And the Policy covers bodily injury caused only by the specific classified operations identified in the Declarations, not "tree services" generally. Because the undisputed facts establish that cutting a notch in the tree is the reason it fell, the question is whether cutting a notch in a tree comes within the classification limitations of trimming or pruning.

Mr. Wilson offers no evidence creating a dispute of fact with respect to Mr. Darnell's testimony that cutting a notch is done only to fell a tree. Instead, Mr. Wilson notes that he asked Mr. Browning to prune the oak trees on the property and that Mr. Browning and Mr. Darnell in fact pruned the tree that fell earlier in the day on April 3, 2016. (Doc. 57-2 at 31, 65). Mr. Wilson also argues that Mr. Browning and Mr. Darnell "attempted to prune trees or limbs . . . and, in doing so, made mistakes which proximately injured Wilson." (Doc. 61 at 12; *see also* Doc.

57-2 at 65). Even if Mr. Browning and Mr. Darnell pruned some trees, including the one that fell, and even if Mr. Browning and Mr. Darnell improperly pruned the tree that fell because they cut a notch in the tree, as Mr. Wilson suggests, the undisputed facts remain that Mr. Darnell cut the notch in the tree, which caused the tree to fall and resulted in injuries to Mr. Wilson. (Doc. 57-2 at 35; Doc. 57-6 at 7). And the undisputed facts remain that the only reason one would cut a notch in the tree is to fell the tree, not prune or trim it. (Doc. 57-6 at 7).

Mr. Wilson also argues that coverage should exist under the Policy because when Mr. Browning applied for insurance for the tree service portion of his business, Mr. Browning told his insurance agent that removal of trees would constitute some portion of his business and because Northfield's agent who made the initial coverage determination did not have proper training or conduct a proper investigation. (Doc. 61 at 12-13, 16-17). This argument asks the court to overlook the plain, unambiguous language of the classification operations for which the Policy provides coverage. And as stated, *see supra* pp. 14-17, Mr. Wilson has not presented evidence creating a dispute of fact regarding whether his injuries were caused by one of those operations. Therefore, Northfield is entitled to judgment as a matter of law.

## IV. CONCLUSION

For the reasons outlined above, the court **GRANTS** Northfield's motion for summary judgment. (Doc. 56) The court **ENTERS JUDGMENT** in favor of Northfield and against Defendants Browning Timber, Mr. Browning, and Mr. Wilson.

**Within seven days** of entry of this order, Northfield shall renew its motion for default judgment against Mr. Darnell or voluntarily dismiss its claim against Mr. Darnell.

**DONE** and **ORDERED** this January 8, 2019.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE